May it please the Court, my name is John Glinski, I'm an Assistant Attorney General with the Wisconsin Department of Justice and I represent the appellant Mya Haessig. I think it's pretty clear from the district court's decision that the court relied on the wrong standard. The court was trying to determine whether Haessig had sufficient personal involvement to be liable under section 1983. The language from the decision itself makes that pretty clear for example on page 7. The court says however the showing that Flores assaulted Locke is not sufficient for Locke to be bailed is axiomatic that respondee at superior liability does not attach to a supervisor for a subordinates on constitutional acts. So what is the standard? The standard is what was set forth by the Wisconsin United States Supreme Court in Ashcroft and by this court in Grindle following which you must have show more than deliberate indifference. Well I don't understand that I must say. What more must you show? Do you have to show some of the cases talked about discriminatory animus? Do you have to show that? Well you do under the Ashcroft decision what the court said is quote under... Wait a second, will you answer my question? Do you have to, is that what you have to prove? Discriminatory animus? Well at least that. At least that? That's not enough? No I don't think so because it says what the Supreme Court said. Do you know what the word animus means? Yes. Well why wouldn't discriminatory animus be the most deliberate form of intentional discrimination? Because will or awareness of consequence not sufficient. What you need is the decision-makers undertaking a course of action. That's the Supreme Court language. Course of action for the deliberate, that's discriminatory animus, right? You're doing something discriminatory out of dislike, hostility, right? In Iqbal, we were talking, the court was talking about a course of action. Right. The imprisonment and detention etc. of people. Here we're talking about inaction, right? Is there a constitutional difference between the two? Well I think there is. What here we have basically is Hayseg supposedly being aware of what's going on but doing nothing about it. She has the power to do something about it, right? Yes, that question wasn't raised but I wouldn't deny that. Right, okay. Could I, I guess I have a question about whether we actually have jurisdiction here, okay, because whatever the standard is, we've got knowledge and acquiescence alleged, right? Correct. And it's, I guess I wonder whether the issue presented isn't really whether knowledge and acquiescence is sufficient to infer the required state of mind, whatever it might be. Boy, I don't think so, not under Ashcroft or Grindle, because in Grindle this court held that the, some positive action was taken to cover up, help cover up the discriminatory acts. And then in Judge Posner it indicated in there that he thought if the supervisor had a policy of ignoring discrimination, that might be a course of action that suggests intentional discrimination. You know, we don't have any of that here. We don't usually hear appeals from denials of summary judgment. Of course qualified immunity claims are often, you know, the exception to that rule. But the plaintiff claims that this decision is too fact-bound to be considered under the collateral order doctrine, and you didn't respond to that claim. So maybe you'd like to now. Well, I take exception to that, Your Honor. I think I did. I indicated that under the facts as determined by the district court and taking the facts as alleged by the plaintiff as being undisputed, we still have nothing more than HASIG having knowledge and acquiescence. In other words, being aware of what's going on, failing to intervene or do anything about it. Let's explore that a little bit, for example, in the private employment context, okay? In the private employment context where, let's say you have sexual harassment by a supervisor, and you have that person's stop it. That's sufficient to infer a Title VII violation without anything further. Right, but that's important, Title VII, not 1983. And the difference is in what? The difference is what the Supreme Court said in Ashcroft and what this court said in Zimbabwe. Yes, but you said in your brief in the district court, liability attaches when a supervisor knows about conduct and approves it, condones it, or turns a blind eye. No, that's what the district court said. That involves personal involvement. That's a different standard. So turning a blind eye violates Title VII but not the Constitution? Is that the position? Well, I think that that gets you further under Title VII action. It doesn't get you far enough in 1983 action. I don't understand you. You said in your brief that there would be liability under 1983 if a supervisor knows about conduct and turns a blind eye. Now, are you abandoning that position? Your Honor, where do you find that in my brief? On page 3. I think it's page 3. Defendant Hessig's brief in support of motion for summary judgment. The initial brief? Page 3. First full paragraph after the quotation. Last sentence. Remember that? In the initial brief or the... It says Defendant Hessig's brief in support of motion for summary judgment. On page... In the district court? Yeah, in the district court. I think it's in the district court. Decision. No, I mean in the district court. Yeah, that's the district court language. That's not mine. I'm quoting the district court. That's why I'm saying the court used the wrong standard. They're using the personal involvement. We're not arguing that Hessig... Wait, I'm sorry. We're not arguing that Hessig... Wait, I don't understand. ...wasn't personally involved. There are sufficient undisputed facts that show that she had sufficient and the requisite personal involvement. I don't understand. I'm being slow. This is your brief in the district court. All right. Isn't it? It says Defendant Hessig's brief. Isn't that your... Quoting the district court. Pardon? Quoting the district court decision. That's what I said, in the district court. Yeah. In the district court you said that knowing about conduct and turning a blind eye is sufficient for liability under 1983. Now are you... In terms of personal involvement. Pardon? For purposes of determining whether there is requisite personal involvement. You cite a decision of ours. Now are you saying that this is wrong, what I just read? I'm saying that that was intended to determine whether there was requisite personal involvement because I was arguing... Look, I don't know what you're saying because this says liability attaches. Well, I don't... When the supervisor knows about conduct and turns a blind eye. And are you now saying that is an incorrect statement of law? I don't know what else I can say except that was cited in the context of determining... I was making an argument there wasn't sufficient personal involvement and I was quoting this court as saying that that is what is needed to establish liability in terms of whether there's requisite personal involvement. That gets you only so far. You then still have to show intentional... But you said this is liability. You don't have to go any farther than this. This is liability. You say this is liability, not personal involvement. This is all you need for liability according to you citing us. Right. If the only question is whether there was requisite personal involvement. That's under that part of the brief. That's under that self-heading. Why does it say liability attaches only when a supervisor... Because that's the language of this court in determining whether there was sufficient personal involvement to be liable under section 1983. That doesn't get you the liability there for Hessig. In this court you contended that purposefully ignoring a complaint of unconstitutional behavior is not the same as purposeful discrimination. Correct. But you didn't cite a case. What's your best case law supporting a meaningful difference between purposely ignoring a complaint and purposeful discrimination? Well, I think Ashcroft and Grindle both stand for that proposition. The problem in Iqbal was that the Attorney General and the Director of the Federal Bureau of Investigation obviously had very good reasons to undertake a course of action in response to the attacks on this country on September 11, 2001. And the issue in the case was whether their actions were also motivated by religious, ethnic, or nationality-based motives. Right? Correct. And so the question was whether there had been sufficient pleading, as the Supreme Court saw it, of that illegitimate motive when there were perfectly legitimate motives to account for their conduct. That was the problem they were dealing with. In this case, it's hard to see a legitimate motive for simply ignoring a complaint that a parole officer or probation officer is abusing his authority by sexually harassing someone under his control. This seems to be quite a different kind of problem. But that's not what this Court said in Grindle. In Grindle, this Court said deliberate indifference, which you could allege against Hasek, is not sufficient in an equal protection claim for a supervisor. You've got to show a course of action that indicates purposeful discrimination. And Hasek doesn't have that. Hasek did nothing. I don't believe that. I don't actually believe that. Well, let me ask you this, then, if I can. What did she do? There's scum, anyway. So that's not a constitutional violation? Certainly it's deliberate indifference, whether it is more than knowledge. Answer my question. Is that a constitutional violation, or is that not? Based on Grindle, no. It's knowledge and acquiescence. It's not a purposeful course of action. Does that make any sense? No. It's binding precedent, whether it makes sense is perhaps beyond the point. Senseless, binding precedent. Well, my time is up. Thank you, guys. Okay, well, thank you very much, Mr. Glenski. Mr. Falkiner? May it please the Court. Russ Falkiner on behalf of the Apolyte, Adam Locke. This Court's cases make it clear that a supervisor commits an act of intentional discrimination by failing to act under what you might call a knowledge plus scenario. The supervisor has actual knowledge of a subordinate's discrimination. She fails to respond to that discrimination. And there's some kind of circumstantial evidence of her state of mind that suggests that failure to respond is motivated by a discriminatory purpose. What's your best evidence that she was discriminating on the basis of Locke's sex? Where's the intent to discriminate specifically on that ground? Her retaliatory response to his report of discrimination is good evidence of a discriminatory intent. The fact that she misled her superiors about what he had told her is good evidence of a discriminatory intent. And the fact that she failed to initiate the investigation that she was required to initiate is also good evidence of discriminatory intent. On the basis of sex? Yes, Your Honor. Locke's sex? Yes, Your Honor. And that inference is, I think, best illustrated by this Court's decision in the Bowen case where there was a supervisor who had actual knowledge of ongoing sexual harassment and failed to do anything about it. And this Court said you don't need to show a policy that all types of complaints like this are not responded to, that it doesn't have to be against all members of a protected class if there's discrimination on the basis of sex and a supervisor fails to respond and there's no evidence of any legitimate basis for that response. It's a fair inference that that supervisor shares that discriminatory intent. You'd have a stronger case if there was some sexual harassment of women prisoners and if Hessig, you know, did react to that, right? That would, what I described just a moment ago as knowledge plus as a plus factor, that would be a plus factor that would be very good evidence of discriminatory intent. But the fact that when Locke... But how do you distinguish between discrimination and simply irresponsible performance of one's job? That, I think, is the sort of circumstantial evidence that sort of suggests was this just negligence and irresponsible performance or is there some animus here? And the fact that there's undisputed summary judgment evidence that Hessig got angry and irritated with Locke after he reported the harassment. She told him, I'm going to make sure you don't get off electronic monitoring until your parole is over. Agent Wendy Schwartz told Locke, Hessig has targeted you along with she and other agents at the 6th Street Cop House. They're targeting you for retaliation. And Locke provided sworn testimony that his parole was revoked as part of that retaliatory targeting. All of that is intentional, specific intent conduct that manifests animus toward Mr. Locke. And there is a more difficult question that I think this court doesn't need to answer in this case, which is in a scenario of bare knowledge and acquiescence, is that enough to support a summary judgment fact issue on intentional discrimination? But that, we have a lot more than that in this case and that's kind of a difficult question after Grindle and after Iqbal that I don't think this court has to resolve to affirm the district court's decision. In addition to that, the retaliatory conduct that we talked about, Hessig reported to her superiors at the regional office, oh, don't worry, I talked to Locke. He doesn't want to talk about his complaint. He doesn't want to file a written statement. And Locke swore under penalty of perjury in his summary judgment brief, which we've argued should be liberally construed as an affidavit since he proceeded pro se. He said, I never talked to her. I've never spoken to her about my complaint against Agent Flores. I never refused to fill out a written complaint. Nobody even told me I needed to do that. They never gave me a copy of the form. So she's made a misleading report up the chain saying that this complaint is not as serious as it actually was. And in the Grindle case, that's what the principal did when she was reporting on the teacher's sexual abuse of students. She told her superiors, this is a pedagogy issue. This is a teaching methods issue. She didn't report it as a sexual abuse issue. And this court very clearly held that that kind of misleading report up the chain, if you soft pedal a report, that supports an inference of intentional discrimination. And she did the same kind of thing here when she told the regional office about Locke's complaint. Now, I think part of the position that she's taken in her briefs and I think that Mr. Glinski took at argument today is that is the confusion between action and failure to act as a state, as a basis of liability and what kind of state of mind a defendant has to have when they engage in this culpable conduct. And Iqbal and then in Grindle, this court did or possibly make new law on the state of mind that's required to incur liability as a supervisor for intentional sexual abuse. Intentional discrimination. But there's no change to what a supervisor can do or not do, what kind of culpable conduct would support liability. And it's been the law in this circuit for at least 32 years that a failure to act can support liability under the Equal Protection Clause. Iqbal didn't change that and Grindle didn't change that. And in essence, the position that she's taking on appeal is, well, in a failure to act scenario, that's never more than deliberate indifference. That's never more than knowledge and acquiescence. It may well be that knowledge and acquiescence is enough to create a fact issue on intent, but that's a question the court doesn't have to answer today because we have a lot more than that. We have her retaliatory response, we have her misleading report, and we have the fact that she didn't initiate the investigation that DOC policy and procedures required her to initiate. Now that's something where they join issue on the facts in their reply brief and they say, actually she wasn't personally required to initiate the investigation. I'd like to point out two problems with that argument. One is that she herself testified in her affidavit, paragraph 12 of her affidavit, I was directed to oversee an investigation where Agent Schwartz would be the primary. She said the same thing in response to Locke's interrogatory number 23 and that's district court docket number 86. The regional office directed me to direct Agent Schwartz to interview Locke. That's evidence that would support a jury finding that she was personally responsible to initiate an investigation and she didn't do it. And this court held in the Bosney case that when you depart from policy and establish procedure like that, that supports an inference of intentional discrimination. So that, on the merits, I think that's a clear fact issue that makes a tribal issue for a jury. But as your honors noted  the fact that that argument has been made does raise a significant question about this court's jurisdiction and the plaintiff's, the version of the facts supported by the plaintiff's evidence. And to interject a fact dispute and to say, oh, that's not what the facts show, that this is no longer a separate legal issue about immunity, it becomes intertwined with the facts that go to the merits and that is no longer an appealable collateral order under Cohen. The Gutierrez case that we cited in our red brief makes that point that if you interject a dispute of facts into your argument, you can plead yourself out of the Court of Appeals. We think that's what Hasek did by arguing the facts on her duty to investigate and on arguing the facts about the nature of her reporting up the chain to her superiors in the regional office. And the last thing I'd like to speak to unless the court has other questions is the district court's opinion and what the district court found. And Mr. Glinsky is correct that the district court cited some of the old supervisory liability personal responsibility cases in large measure because those are the cases the court was directed to in the state summary judgment briefing. But the court made a finding or found a fact issue that went beyond deliberate indifference. The court said that there's a fact issue as to whether she investigated the complaint and whether she ever spoke to Locke as she claims that she did. And that means that she might have purposefully ignored his complaint. That's a purposeful failure to act, an intentional discriminatory failure to act. Even though the court may have cited a couple of cases that may or may not still be good law after Grindle, the court made the right determination and that's at page 8 of its opinion and 108 of the appendix. Let me just tell you, I don't read Grindle as having attempted to restrict supervisory liability but simply to come to grips with Ashcroft. But let me ask you Mr. Faulkner about, we've got, I'm a little mystified at this point about the status of Mr. Locke's due process and 8th Amendment claims. Are those against Flores only or is he also asserting those against Hessig? He has asserted those against both Flores and Hessig. Okay. And, but I thought the appeal here deals only with the equal protection claim. That's correct. And that's... So... Okay. So whatever we do here, the case will go forward? Yes, Your Honor. That's correct. And so there's a tribal issues on those two claims. Also on the scope of employment issue on whether Flores was acting in his capacity as a parole officer when he engaged in this conduct and all of that's going to go forward regardless of what happens here. And unless the court has other questions, I will see the balance of my time. Okay. Well, thank you very much Mr. Faulkner. Mr. Glinski? No, my time is up now. Okay, well... Could I just ask Mr. Glinski to address that question about the status of the due process and Eighth Amendment claims? With respect to that, Your Honor, the way we read the district court decision granting leave to proceed, there was no permission to proceed on those two claims against Hessig. The court talks only in terms of equal protection both against Flores and then also against Hessig. So you disagree with what the plaintiff's counsel just told us about whether those claims will go forward in the district court? Against Hessig, yes, Your Honor. Okay. Well, that will give us something to puzzle through. Thank you. Okay, well, thank you very much both counsels.